J-S14017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.I.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.T., FATHER | : : : : : : | |
| | : | No. 2708 EDA 2017 |

Appeal from the Order Entered July 20, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000701-2016

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 11, 2018**

E.T. ("Father") appeals from the decree entered in the Court of Common Pleas of Philadelphia County involuntarily terminating his parental rights to his daughter G.I.M. ("Child"). Father challenges the sufficiency of the evidence. We affirm.

In its Rule 1925(a) opinion, the trial court aptly summarized the factual and procedural history of this case, which we adopt for purposes of this appeal. *See* Trial Court Opinion, filed Oct. 11, 2017 (1925(a) Op.), at 1-16.

By way of background, Child (d.o.b. January 2008) is the daughter of Father and D.M. ("Mother").[1] Child has never resided with Father. Child was

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Mother also filed an appeal (docketed in this Court at 2651 and 2652 EDA 2017) regarding both G.I.M. and another child I.G.M.D., whose father is another individual, K.D.

first adjudicated dependent in December 2014. Mother indicated to the Department of Human Services ("DHS") that she did not know the whereabouts of Father. After DHS obtained an address for Father via a Parent Locator Service ("PLS") search in December 2015, a letter was sent to him. Father did not respond to the letter but did attend a hearing in August 2016, where he acknowledged knowing that Child was under the care of DHS. After this hearing, Father began attending visitation with Child. Father's parental reunification objectives included obtaining appropriate housing for Child, completing parenting classes, and attending visitation.

On August 5, 2016, DHS filed Petition for Involuntary Termination of Parental Rights. Following a hearing on July 20, 2017, the trial court granted the petition. Father filed this timely appeal.

Father raises five issues for our review:

1.    Whether the trial court erred by terminating the parental rights of Appellant, [Father], under 23 Pa.C.S.A. § 2511(a)(1)?

2.    Whether the trial court erred by terminating the parental rights of Appellant, [Father], under 23 Pa.C.S.A. § 2511(a)(2)?

3.    Whether the trial court erred by terminating the parental rights of Appellant, [Father], under 23 Pa.C.S.A. § 2511(a)(5)?

4.    Whether the trial court erred by terminating the parental rights of Appellant, [Father], under 23 Pa.C.S.A. § 2511(a)(8)?

5.    Whether the trial court erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of Appellant [Father] parental

rights best serves the child's developmental, physical and emotional needs and welfare?

Father's Brief at 5.

When considering an appeal from an order involuntarily terminating parental rights, we accept as true the trial court's findings of facts so long as they are supported by the record, and then determine whether the trial court made an error of law or abused its discretion in rendering its decision. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill-will. *Id.*

The party petitioning for termination bears the burden of proving all elements of the termination petition by clear and convincing evidence. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

The termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a two-step analysis. In the first step, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the 11 grounds for termination set forth in Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). If the court determines that the petitioner has proven at least one of the provisions of

Section 2511(a), only then does it proceed to the second step of the analysis. *Id.* In the second step, the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interests of the child. 23 Pa.C.S. § 2511(b); *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012). In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect on the child of permanently severing any such bond.

Father argues that the termination of his parental rights was not appropriate under 23 Pa.C.S. §§ 2511 (a)(1), (a)(2), (a)(5), or (a)(8). *See* Father's Brief at 13-15. To this end, Father presents the overarching argument that once he became aware of Child's placement and the potential termination of his parental rights, he began attending court hearings and completed his parental reunification objections including: attending visitation, completing parenting classes, maintaining employment, and establishing a housing plan. *Id.* at 14. He also asserts that the trial court erred by terminating his parental rights under 23 Pa.C.S. § 2511(b), because the evidence presented at trial established that a growing bond exists between Child and himself. *Id.* at 15-16.

The trial court rejected Father's arguments. It explained that clear and convincing evidence established that Father's parental rights were properly terminated under 23 Pa.C.S. §§ 2511 (a)(1) & (a)(2) because he demonstrated a settled purpose of relinquishing his parental rights. The court

noted testimony establishing that Father initially failed to respond to correspondence from the DHS and failed to obtain and maintain appropriate housing for Child, instead proposing that Child live with Father's mother. **See** 1925(a) Op. at 19-21. Further, the trial court specifically determined Father's parental rights were properly terminated under 23 Pa.C.S. § 2511(b) because the testimony established that Father's bond with Child was only just beginning and Child is strongly bonded with her foster mother. **Id.** at 21-22.

After reviewing the trial court's opinion, the record, the parties' briefs, and relevant law, we see no abuse of discretion or error of law. Accordingly, we affirm on the basis of the well-reasoned opinion of the Honorable Allan L. Tereshko, which we adopt and incorporate herein. **See id.** at 17-23.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/18

# THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
# IN THE COURT OF COMMON PLEAS

IN THE INTEREST OF:    : **FAMILY COURT DIVISION**
                       : **JUVENILE BRANCH-DEPENDENCY**
                       :
**G.I.M., a Minor**    : CP-51-AP-0000701-2016/CP-51-DP-0002734-2014
d/o/b: 1/24/2008       :
                       :
                       :
                       :
                       :
**Appeal of:**         : **Superior Court Nos. 2708 EDA 2017**
**E.T., Father**       :

## O P I N I O N

E.T. ("Father"), Appeals from the Decree and Order entered by this Court on July 20, 2017, granting the Petition to Involuntarily Terminate Father's Parental Rights to his minor child: a female, G.I.M., (d/o/b January 24, 2008), and changing the Child's Permanency Goal to Adoption, filed by the Department of Human Services ("DHS") on August 5, 2016, and served on all parties.

After Termination/Goal Change Hearing on July 20, 2017, this Court found that clear and convincing evidence was presented to terminate the parental rights of Father, E.T., ("Father") as to the Child, and to terminate the parental rights of Mother, D.J.M. In response to the Order of July 20, 2017, terminating his parental rights, Father, filed an appeal on August 20, 2017. Mother also filed Appeals on August 18, 2017 to the Orders of July 20, 2017, which will be addressed by the Court in a separate opinion filed under Superior Court Nos. 2651 EDA 2017 and 2652 EDA 2017.

1

## STATEMENTS OF MATTERS COMPLAINED OF ON APPEAL

In his Statements of Matters Complained of on Appeal, Father raises the following issues:

1. Appellant, Eric Taylor (hereinafter E.T.) is the Father of G.I.M., a minor.
2. By Order dated July 20, 2017, Appellant, E.T.'s parental rights to G.I.M. were involuntarily terminated by Judge Allan L. Tereshko.
3. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds that Father has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties under 23 Pa.C.S.A. §2511 (a)(1).
4. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds under 23 Pa.C.S.A. §2511 (a)(2) that Father lacks the present capacity to perform his parental responsibilities.
5. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights under 23 Pa.C.S.A. §2511 (a)(5) because the Department of Human Services failed to prove by clear and convincing evidence the present and continued incapacity of Father to provide essential care necessary for Child's physical and mental wellbeing.
6. The Trial Court abused its discretion and committed legal error in terminating Father's parental rights under 23 Pa.C.S.A. §2511 (a)(8) because the Department of Human Services failed to prove by clear and convincing evidence that the conditions which led to Child's placement continue to exist.
7. The Trial Court did err in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of showing that the best

2

interest of the Child was served by terminating Father's parental rights pursuant to Section 2511 (b) of the Adoption Act.

8. The Trial Court abused its discretion and committed legal error in terminating Father's parental rights under 23 Pa.C.S.A. §2511 (b) because the Department of Human Services did not present competent evidence regarding the nature of the bond between parent and Child in order to assess the best interest of the Child.

## PROCEDURAL HISTORY

D.J.M. is the Mother of both Children: I.G.M.D. and G.I.M. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"a").

E.T. is the putative/presumptive Father of G.I.M. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"c").

On October 31, 2014, the Department of Human Services (DHS), received a General Protectives Services (GPS) Report alleging that the Children's Mother, D.J.M., was with the Children on a street corner and asked their Maternal Uncle, M.S. to help her inject drugs; that when he refused, Mother injected the drugs herself; that the Children began to wander off so M.S. took the Children to the home of their Maternal Grandmother, S.S.; and that G.I.M. was found holding Mother's purse which had needles in it. The Report also alleged that the Children were with Maternal Grandmother, S.S. where they were to remain according to Safety Plan that was completed on October 31, 2014. The Report also alleged that the family was residing in a shelter; that G.I.M.'s Father, E.T., was incarcerated; and that G.I.M. attended Lawton Elementary School in the 1st grade and had missed several days of school. The Report further alleged that Mother

3

had ongoing drug and alcohol issues and was in a methadone program, but was allegedly abusing methadone by attending more than one clinic daily; and that E.T. had a criminal history and that the family was currently receiving In Home Protective Services (IHPS) through Community Umbrella Agency (CUA) Turning Points for Children. This Report was substantiated and determined as valid. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"d").

On October 31, 2014, DHS visited the home of Maternal Grandmother, S.S. and found it safe and appropriate. Both S.S. and her paramour, J.M., passed all necessary clearances. A Safety Plan was implemented. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"e").

On November 3, 2014, S.S. found needles in her home after Mother had visited the Children. S.S. found needles in Mother's purse. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"f").

On November 4, 2014, Mother began receiving in-patient drug and alcohol treatment and counseling at SOAR. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"g").

Mother was denied service from her methadone clinic on 10/16/2014 due to higher than normal levels of methadone in her blood, suggesting she was attending more than one clinic on a daily basis. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"h").

4

On 11/24/2014, DHS filed an urgent dependent petition. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"i").

Adjudicatory Hearings for the Children were held on December 3, 2014, before the Honorable Allan L. Tereshko. The Court found that legal custody of the Children to transfer to DHS and physical custody of the Children to remain with Maternal Grandmother. DHS has completed home evaluation on Grandmother's home. Mother is referred to CEU for a forthwith full drug and alcohol screen, assessment, and monitoring. Father is referred to the CEU unit for a forthwith drug screen, assessment, and monitoring once he avails himself. CUA to refer for kinship. Mother is to have supervised visits with the Children, and Father is to have supervised visits if they avail themselves. Children are safe as of 12/01/2014. (Orders of Adjudication and Disposition-Child Dependent--Amended, 12/03/2014).

On January 15, 2015, CUA held a SCP meeting for the family. The parental objectives for Mother were: 1) Mother will participate in drug and alcohol treatment until fully completed; 2) Mother will continue mental health treatment and comply with medication management; 3) Mother will locate suitable housing with space for the Children; 4) Father, E.T., will make his whereabouts known and participate in planning for the Children's needs; and 5) E.T. will contact CUA and provide valid contact information and respond to CUA correspondence. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"l").

A Continuance was granted on March 24, 2015 for both Children's cases. DHS commitments to stand. Cases to remain status quo. (Continuance Orders, 3/24/2015).

Permanency Review Hearings were held for both Children on May 20, 2015, before the Honorable Allan L. Tereshko. Orders were entered that legal custody of the Children to remain with DHS, and placement to continue in Foster Care JJC. Children to remain committed. Mother is incarcerated[1], and CUA to arrange supervised visits at the prison for Mother. Children may be moved to Kinship Home of Grandmother prior to next court date by agreement of the parties. I.G.M.D. referred to Children's Crisis Treatment Center for services. Her Father, K.D.'s visits are suspended until further order of the court and after Child's evaluation at CCTC. (Permanency Review Orders, 5/20/2015).

Permanency Review Hearings were held for both Children on August 13, 2015, before the Honorable Allan L. Tereshko. Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Care through JFCS—supervised by CUA Turning Points for Children. Child is enrolled in therapy services through JJPI, however the therapist canceled on the family three times and services are switched to Bethanna. Child is to continue to receive therapy and is up-to-date with her medical and dental. G.I.M. to remain in Foster Care through CUA Turning Points for Children. Child has intake appointment through the Wedge scheduled for 8/14/2015, and is up-to-date with medical and dental. Mother is referred to CEU for assessment, forthwith drug screen with three random drug screens and dual diagnosis.

---

[1] Secure Court Summary: D.J.M., d/o/b: 07/14/1984.

6

Mother is not to have visitation with the Children unless recommended by the Children's therapist. I.G.M.D.'s Father, K.D.'s visits are suspended until further order of the court. (Permanency Review Orders, 8/13/2015).

On September 17, 2015, Mother was referred to ARC for anger management, housing, mental health, and parent education. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"p").

A CEU Report for Mother dated 10/29/2015, reflected the following: Mother tested positive for opiates on 10/14/2015; tested negative for all substances on 8/13 & 8/15/2015; Mother scheduled an appointment with the CEU for 9/15/2015 to provide verification for her enrollment in treatment. She was a no call/no show to the appointment. CEU, therefore, could neither confirm nor deny Mother's treatment status. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"o").

On October 22, 2015, CUA held a SCP meeting for the family. The parental objectives for Mother were: 1) Mother will participate in drug and alcohol treatment and comply with recommendations; 2) Mother will comply with her court-ordered random drug screens to maintain sobriety; 3) Mother to comply with her dual diagnosis treatment; 4) Mother will participate in courses through ARC as referred; 5) Mother will locate suitable housing with space for the Children; 6) Father, E.T., will make his whereabouts known and participate in planning for the Children's needs; and 7) E.T. will contact CUA and provide valid contact information and respond to CUA correspondence. Mother attended this meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"q").

7

Permanency Review Hearings were held for both Children on October 30, 2015, before Juvenile Court Hearing Officer, William T. Rice. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Care through Bethanna. Child attends daycare, and is medically up-to-date. She has eczema and is being treated. Child had intake at JJPI and was referred to CCTC. She has telephone contact with her sibling. G.I.M. attends Pennypacker School in the 2nd grade, and is medically up-to-date. Child receives weekly individual therapy at the Wedge, and has telephone contact with her sibling. Mother is attending Parenting and anger management at ARC, and will begin Job Training. Whereabouts of both Fathers are unknown. Children to remain in therapy, and CUA to explore kinship resources. Mother referred to CEU forthwith for full drug and alcohol screen dual diagnosis, assessment and monitoring and 3 randoms prior to next court date. Mother referred to BHS for consultation/evaluation. Both Fathers referred to CEU forthwith for full drug and alcohol screen, dual diagnosis and assessment and monitoring, when they avail themselves. (Permanency Review Orders, 10/30/2015).

On January 20, 2016, a revised SCP meeting was held concerning the family. The parental objectives were: 1) Mother will participate in drug and alcohol treatment and comply with recommendations; 2) Mother will comply with her court-ordered random drug screens to maintain sobriety; 3) Mother will update the CUA case manager as to any new medications prescribed for her; 4) Mother will participate in parenting, anger management, and employment courses through ARC; 5) Mother will locate suitable housing with operable utilities; 6) Father, E.T., will make his whereabouts known and participate in planning for the Children's needs; and 7) E.T. will contact CUA

8

and provide valid contact information and respond to CUA correspondence. 8) Father, K.D., will comply with court orders; 9) K.D., will attend a drug and alcohol treatment program and comply with treatment recommendations; 10) K.D., will obtain suitable housing with operable utilities; 11) K.D., will complete a parenting education course. Mother and Father, K.D., participated in the meeting by telephone. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"s").

A CEU Report for Mother dated 1/26/2016, reflected the following: Mother participated in a drug and alcohol assessment at Family Court on 12/03/2015 and was referred to Intensive Outpatient Dual Diagnosis Treatment at Parkside Recovery; Mother failed to attend her intake appointment on 1/02/2016, as per Tyrone Frazier at Parkside Recovery; CEU recommended that Mother reschedule an intake appointment with Parkside Recovery and stay until the success completion of the program. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"u").

Permanency Review Hearings were held for both Children on January 27, 2016, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Pre-Adoptive Home through JJC. Visitation with her sibling is occurring at least twice a month. Mother and Father have supervised visits with the Child at the Agency, visits are to continue as arranged. Child attends TOPS Day Care, and receives individual therapy through JJPI. G.I.M. to remain in a Pre-Adoptive Home through JFCS. Visitation with her sibling is occurring at least twice a month. Mother has supervised visits with the

9

Child at the Agency, visits are to continue as arranged. Child attends Pennypacker School, 2nd grade, and receives individual therapy through The Wedge. A Report from CEU for Mother is incorporated into the record. Mother is re-referred to CEU for assessment and forthwith drug screen. All services for the Children to continue. CUA to explore a potential resource for the Children. Children may be moved prior to the next court date by agreement of the parties. (Permanency Review Orders, 1/27/2016).

On April 12, 2016, Mother tested positive for Phencyclidine (PCP) at Parkside-Frankford. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"w").

A CEU Report for Mother dated 4/19/2016, reflected the following: Mother was then attending substance abuse treatment at Parkside-Frankford; as per Mother's counselor at Parkside-Frankford, Mother had made efforts during the past period to further her recovery, and specifically, that she attended group and individual sessions and expressed a desire to reunite with her Children; Mother was taking prescribed Suboxone to stabilize her Opiate use disorder. Mother rendered negative drug screen on 1/27/2016, at Family Court and 4/07/2016, at Parkside Frankford; Mother tested positive for PCP on 4/12/2016, at Parkside-Frankford. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"x").

Permanency Review Hearings were held for both Children on April 20, 2016, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Home through Tabor. Remain as committed. G.I.M. to remain in Foster Home through JFCS.

Mother's counsel failed to appear, case continued. (Permanency Review Orders, 4/20/2016).

On May 7, 2016, Mother and Father, K.D., attended a scheduled visit with the Children. CUA Case Manager, Iesha Irwin, observed both Mother and K.D. under the influence of a mind-altering substance. She observed that Mother and K.D. displayed slurred speech, bloodshot and glassy eyes, and constant back and forth to the bathroom. Mother and K.D.'s state prohibited them from being able to effectively interact with the Children. During the visit, the Children appeared uncomfortable and kept asking to leave. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"y").

Permanency Review Hearings were held for both Children on May 25, 2016, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Home through Turning Points, and G.I.M. to remain in Foster Home through JFCS. Weekly supervised visits with Mother and Father, K.D., are to continue. Remain as committed. Mother referred to CEU for assessment, monitoring, forthwith drug screen and 3 randoms prior to next court date. Father, K.D. is referred to CEU for assessment, monitoring, forthwith drug screen and 3 randoms prior to next court date. Mother and Father, K.D. are to sign consents for I.G.M.D. to be moved to the home of Amber Kelly by agreement of DHS and Children Advocate, and to sign consents for the Child at Tree of Life. Father, K.D. was referred for parenting. I.G.M.D. is receiving services through Tree of Life. (Permanency Review Orders, 5/25/2016).

On July 15, 2016, Mother was discharged from her drug and alcohol programs at NHS Parkside due to inconsistency with the treatment. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"aa").

Permanency Review Hearings were held for both Children on August 24, 2016, before the Honorable Richard J. Gordon. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Home through Turning Points, and G.I.M. to remain in Foster Home through JFCS. Children are doing well. CEU submitted Report as to Mother. G.I.M.'s Father, E.T., address is 1115 South 54 Street, and mailing address is 1412 South Addison Street. Mother and Father, K.D., are referred back to CEU for assessment, full drug and alcohol screens, and 3 random screens prior to next court date, once they avail themselves. ACS to do PLS on Mother. CUA Turning Points for Children to explore Paternal Grandmother of G.I.M. as possible placement/kinship resource and do home assessment on Father, E.T.'s home. Continuance Granted. (Permanency Review Orders, 8/24/2016).

Continuance was granted on December 14, 2016 for both Children's cases. DHS commitments to stand. Request by ACS, and cases to remain status quo. (Continuance Orders, 12/14/2016).

Permanency Review Hearings were held for both Children on April 27, 2017, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of Children to remain in Foster Home through Turning Points. Children are safe as of 4/06/2017. Mother and Father, K.D., referred to CEU forthwith for full drug and alcohol screen, assessment and monitoring

12

and 3 randoms prior to next court date. DHS to do PLS on Mother and prison search. CUA to contact Father, K.D., probation officer to find out his address. Father, E.T., resides at 1115 South 54 Street, Philadelphia, PA 19143. Legal Liaison Unit to administratively appoint counsel for each Child and Clair Michelle Stewart to remain as GAL for both Children. Next listing is a Contested Goal Change hearing. (Permanency Review Orders, 4/27/2017)

## TERMINATION HEARINGS

This Court held the Contested Termination and Goal Change Hearing for both Children on July 20, 2017, regarding Mother and both Fathers' parental rights. Mother, D.J.M. did not attend the hearing, but was represented by counsel, Nghi Duong Vo. G.I.M.'s Father, E.T., attended the hearing and was represented by counsel, Daniel Silver. I.G.M.D.'s Father, K.D., did not attend the hearing, but was represented by counsel, Neal Masciantonio. (N.T. 7/20/2017, p.3 at 10-18).

The first witness to testify was Iesha Erwin, Case Manager from CUA-Turning Points for Children. Ms. Erwin stated she has been the Case Manager for both Children since the fall of 2015 to December 2016. She noted the Children came into care when they were left wandering the street while Mother was using drugs. The Children were removed from Mother's care and placed at the Maternal Grandmother's house. She noted the Children were never in the care of their Fathers. (N.T. 7/20/2017, p.10 at 5-25; p.11 at 1-25).

Ms. Erwin testified the Single Case Plan objectives for Father, E.T., were for him to make his whereabouts known. At that time, she noted that the only information they

had was his name, and did not get an address until a PLS was completed in December of 2015, which was 1412 South Allentown Street, Philadelphia, PA. She sent a letter to Father at that address and did not receive a response. (N.T. 7/20/2017, p.14 at 21-25; p. 15 at 1-20).

Ms. Erwin stated she met Father at the court hearing on August 2016, when he acknowledged that he knew his Child was under DHS care but was under the impression that she was going to get the Children back. He told her he was trying to contact Mother on social media because he did not have her phone number, but she would not give him the agency's contact information. (N.T. 7/20/2017, p.15 at 21-25; p.16 at 1-25).

She further testified that Father told her he did not have appropriate housing for reunification with his Child, and told her he was employed as a cab driver but did not provide documentation of employment. Father began having supervised visits with the Child at the Agency after August 2016, and the visits were appropriate, and he would either do homework with the Child or color with her and overall, positive interactions. The Child did not have any particular reaction when visitation terminated with Father. (N.T. 7/20/2017, p.17 at 15-25; p.18 at 1-25; p.19 at 1-16).

Ms. Erwin testified the SCP was updated and the objectives for Father were to maintain housing, complete parenting classes and attend visitation with the Child. There were no drug or alcohol or mental health requirements in the SCP for Father. Father's visits were consistent, once they began. She referred Father to ARC for parenting classes, however she did not know if he completed the classes. She finally stated she believed Father was building a bond with the Child. (N.T. 7/20/2017, p.28 at 1-25; p.29 at 1-5).

14

Regarding the Father's bond with the Child, Ms. Erwin opined that she was uncertain if the Child would suffer irreparable harm if Father's parental rights were terminated because at the time she stopped managing the case, the Child was just getting to know Father. (N.T. 7/20/2017, p.30 at 5-24).

Ms. Erwin stated that the Children were placed with the current foster parent that is present in the court hearing and their behavior has been pretty pleasant. They were gradually getting better, and they were stable, doing well, and were bonding with their caregiver. (N.T. 7/20/2017, p.20 at 1-11).

Catherine Devine, CUA Case manager, was the next witness to testify. She became the Case Manager in December 2016, and remains as Case Manager for both Children to the present. Regarding Father's case plan objectives, she testified that when she took over the case the objectives for Father were to complete a home assessment, provide documentation of employment, and to comply with court orders regarding visitation and parenting classes. (N.T. 7/20/2017, p.35 at 21-25; p.36 at 1).

Ms. Devine noted that Father did complete the parenting course, and she obtained a copy of the certificate. Regarding employment, Father told her he drives for Uber, however, could not provide receipts to prove the employment but did show her his telephone where rides were listed. Regarding housing, she stated that Father did not have appropriate housing and instead wanted his mother to take the Child into her home instead of himself. (N.T. 7/20/2017, p.36 at 2-17).

She further testified that she has supervised Father's visits with the Child and has observed that they have positive interactions. Father has had 12 visits with the Child that she has observed, which occur once per week. She noted they interact a lot, and he

15

provides her with clothing and shoes. He does homework with her and they play games. However, she opined she does not believe the Child would suffer irreparable harm if Father's parental rights are terminated because the bonding with Father has just begun, and the Child has expressed to her that she wants to remain with the foster mother. The Child knows who her Father is, however, sometimes does not want to attend the visits and does not like the back and forth process. Therefore, she believes the best interests of the Child would be served if she was adopted by the foster parent because both Children need stability and consistency, and they receive that with the current foster parent. (N.T. 7/20/2017, p.36 at 18-25; p.37 at 1-25; p.39 at 7-23).

Ms. Devine further testified she has observed the interactions between the Children and their pre-adoptive foster parent. They call the foster parent Mom, and both stated to her that they do not want to leave her house and want to stay there. She further testified, it is a parent-child relationship they have with the foster parent. I.G.M.D. has been with foster parent, Tamika Nelson, since 5/4/2016 and G.I.M. has been with her since 10/19/2016. Both Children are doing very well in the foster home, and especially I.G.M.D. is progressing. The foster mother works very hard with her, and both Children have a positive relationship with her. (N.T. 7/20/2017, p.34 at 22-25; p.35 at 1-20).

On cross-examination by Mary A. Galeota, the Child Advocate, Ms. Erwin testified that I.G.M.D. is now 6 years old, and G.I.M. is 9 years old. She noted the Children told her they want to stay in the foster home, and there are other Children living there, Ms. Nelson's biological daughter and two nephews, who are in Kinship with her. (N.T. 7/20/2017, p.40 at 22-25; p.41 at 1-15).

16

## STANDARD OF REVIEW AND LEGAL ANALYSIS

When reviewing an appeal from a decree terminating parental rights, an appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a trial court's decision as to any one subsection under 23 P.C.S.A. §2511 (a) in order to affirm a termination of parental rights. *In re D.A.T.* 91 A.3d 197 Pa.Super.2014).

The standard of review in termination of parental rights cases requires appellate Courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. In re T.S.M., 620 Pa. 602, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted) In re Adoption of C.D.R., 2015 PA Super 54, 111 A.3d 1212, 1215 (2015).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and

convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

These Children became known to DHS in October 2014, when information was received that the Mother and the Children, then ages 6 ½ and 3 years, were on a street corner and Mother asked the Children's Maternal Uncle, M.S. to help her inject drugs; that when he refused, Mother injected the drugs herself; that the Children began to wander off so M.S. took the Children to the home of their Maternal Grandmother, S.S. Further, G.I.M. was found holding Mother's purse which had needles in it. Both Children were in Mother's care at the time. The Children are now 9 ½ and 6 years old, and are safe and all of their needs are being met by their foster mother.

**A. The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2)[2]**

On Appeal, Father alleges the Court erred by terminating his parental rights based on sections of 23 Pa.C.S.A. §2511(a)(1), (2), (5), and (8). This Court's based its ruling on 23 Pa.C.S.A. §2511(a)(1), and (2), and will only address those sections in this opinion.

Father first alleges the Trial Court abused its discretion and committed legal error in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds that Father has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties under 23 Pa.C.S.A. §2511 (a)(1).

---

[2] (a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

19

The focus of the termination proceedings is on the conduct of the parent. This Court heard credible, compelling evidence from the CUA Case Managers that showed Father failed to perform his parental duties and revealed a settled purpose of relinquishing parental claim to his Child. When Ms. Erwin took over the case in the fall of 2015, Father's whereabouts were unknown to DHS. A PLS was conducted and she obtained an address for Father, and sent a contact letter to the address at 1412 Allentown Street. She never received a response, and Father, ultimately, presented himself to the Court and DHS in August of 2016. He then began visits with the Child, and since he did not have appropriate housing for reunification, he recommended the Child live with his Mother. He told her he was employed as a driver by Uber, and she referred him to ARC for a parenting course. This Court found clear and convincing evidence that Father failed and refused to perform parental duties, failed to address the conditions which brought the Child into placement, and lacks the capacity to adequately provide care and control and a stable environment necessary for the Child's well-being.

Next, Father alleges that the Court abused its discretion and committed legal error in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence that Father lacks the present capacity to perform his parental duties.

This Court relied on credible testimony by both CUA Case Managers, Ms. Iesha Erwin and Catherine Devine, who both testified that the SCP objectives for Father were to obtain and maintain housing, provide documentation of employment, complete parenting, and comply with visitation with the Child. Credible evidence was presented

20

that Father did not anticipate the Child living with him, and instead wanted DHS to consider his Mother to take the Child in, not himself.

Ms. Devine noted that Father did complete a parenting course, and has visited with the Child twelve times since December 2016, and she has observed the visits. She testified she does not believe a parent-child relationship exists between Father and the Child, however, the Child is just getting to know him. She further testified that the Child expressed to her that she wants to remain with the Foster Mother, T.N. Ms. Devine noted that the Child needs stability and consistency and she gets that with the Foster Mother and is safe, with all her needs being met.

### B. Trial Court Properly Found that Termination of Father's Parental Rights was in the Child's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[3]

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court "shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis

---

[4] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d.

This Court heard credible evidence presented by both CUA Case Managers, who testified that the Child was positively bonded to the foster parent, and referred to her as "Mother." The Child looks to her for safety and to meet her needs. Ms. Devine also observed how the Child interacts with Father at the supervised visits, and notes that generally the visits are positive, but the Child sometimes does not want to go to the visits. She noted that the Child expressed to her that she wants to continue to live with the foster mother.

Ms. Devine noted that the Child needs the safety and security that Father cannot provide, and she would not suffer irreparable harm if Father's parental rights were terminated and it would be in her best interest to be adopted.

The Court found credible the evidence that the Child, although just getting to know the Father, is not bonded to him, and therefore, this Court reasoned that the Child would not suffer irreparable harm if Father's parental rights were terminated, and it would be in the Child's best interests to be adopted.

## CONCLUSION:

At the conclusion of the Hearing the Court stated:

> Now the more complex case is the case of E.T., where he presents as a Father who desires to establish a relationship in the future but the stark reality is that he has failed to remedy the issues that brought this Child into care. He is not in a position to parent this Child. His suggestion that

he can use his mother as a substitute to parent for the Child, and use her residence as a substitute residence for the Child suggests that he is not in a position to care for this Child today nor does he have any plan to care for the Child other than some long term plan that someday he may get a house. But the lack of ability to provide parenting for this Child now and over the course of the last 32 months supports a finding that he has failed to remedy those same issues that brought this Child into care, and will not be able to remedy those issues going forward. This placement extending over a period of 32 months makes even more poignant the need for some permanency in these Children's lives, they have established a permanent relationship, parental relationship with the caretaker.

And the need for this Child to have permanency, safety, someone who is consistent in the care for the Child going forward and would provide that consistency going forward requires that I terminate Mr. Taylor's parental rights.

Although there is a bond, there is no parental bond and the testimony is uncontradicted that the Child would not suffer any irreparable harm if the bond is severed; the clear testimony is that the parental relationship emotionally intellectually is with the caregiver and not with Mr. Taylor.

Mr. Taylor's rights are terminated pursuant to 2511 (a) (1) and (2) and 2511 (b). Having now terminated the parental rights, the goal for both Children is changed to adoption. (N.T., 7/20/2017, p.56 at 13-25; p.57 at 1-11, 25; p.58 at 1-15).

For the foregoing reasons, this Court respectfully requests that the Order of July 20, 2017, Terminating Father, E.T.'s Parental Rights to G.I.M. and changing the Child's Permanency Goals to Adoption be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

10-11-17
DATE

23

## CERTIFCATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing OPINION has been served upon the following parties by the manner as designated:

**Family Court Delivery Mail Box**

Daniel Silver, Esq.
1845 Walnut St., Ste. 1199
Philadelphia, PA 19103
Counsel for Appellant, Father, E.T.

Bridget M. Warner, Esq. ACS,
Phila Solicitor's Office
One Parkway, 1515 Arch St, 15th flr.
Philadelphia, PA 19102
DHS Counsel

Clair Michelle Stewart, Esq.
100 S. Broad St., Ste. 1523
Philadelphia, PA 19110
GAL for Child, G.I.M.

Mary A. Galeota, Esq.
1551 Market St., Ste. 1200
Philadelphia, PA 19102
Child Advocate for Child, G.I.M.

Nghi Duong Vo, Esq.
1500 Walnut St., Ste. 2000
Philadelphia, PA 19102
Counsel for Mother, D.M.

_____
**ALLAN L. TERESHKO, Sr. J.**

Oct. 11, 2017
**DATE**